UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSIE GARZA,<br><br>             Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | No. 2:16-cv-01706-KJN<br><br>ORDER |

Plaintiff Susie Garza seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record. (See ECF No. 16.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 19.) Thereafter, plaintiff filed a reply brief. (ECF No. 20.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

summary judgment, and AFFIRMS the Commissioner's final decision.

I.      BACKGROUND

Plaintiff was born on November 19, 1962, and stopped school after the ninth grade. (Administrative Transcript ("AT") 32–33.)[2] On January 3, 2013, plaintiff applied for SSI, alleging that her disability began on November 11, 2012. (AT 158–59.) Plaintiff claimed that she was disabled due to two aneurysms and left side weakness. (AT 187.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on April 2, 2015. (AT 27–65.) Testimony was provided by plaintiff and by a vocational expert (VE) Ruth Arnush. (Id.) The ALJ subsequently issued a decision dated May 8, 2015, determining that plaintiff had not been under a disability as defined in the Act since January 3, 2013, the date the application was filed. (AT 9–22.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 27, 2016. (AT 1–3.) Plaintiff subsequently filed this action on July 23, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.      ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ erred at step two; (2) whether the ALJ failed to make a proper step three determination; (3) whether the ALJ's residual functional capacity ("RFC") determination was without substantial evidence support; and (4) whether the ALJ inappropriately relied on the VE's testimony.[3]

III.     LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[4] At step one, the ALJ concluded that plaintiff has not engaged in

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3

substantial gainful activity since January 3, 2013, the date of her application. (AT 11.) At step two, the ALJ found that plaintiff "has the following severe impairments: Cerebrovascular Accident (CVA) and Aneurysm, Degenerative Disc Disease (DDD), Degenerative Joint Disease (DJD), and Migraines." (Id.) However, at step three the ALJ concluded that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AT 14.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform light work as defined in 20 C.F.R. § 416.967(b), except that plaintiff:

> can never climb ladders, ropes or scaffolds, and only occasionally climb stairs or ramps. She can occasionally balance, stoop, crouch, kneel, crawl, or handle, finger or feel with the left upper extremity. In the interest of safety, the claimant must also avoid concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights, in a workplace environment.

(AT 15.) At step four, the ALJ determined that plaintiff has no past relevant work. (AT 21.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the VE's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. (Id.) Thus, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since January 3, 2013, the date the application was filed." (AT 22.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

Preliminarily, it is important to note that on appeal, plaintiff does not challenge the ALJ's assessment of the medical opinion evidence through any substantive briefing or argument. Thus, any such issue is waived. See Carmickle v. Comm'r, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Here, the ALJ gave significant weight to the opinions of examining neurologist Satish Sharma, M.D. and reviewing physicians P.N. Ligot, M.D. and J.R. Saphir, M.D. (See AT 20–21.) Consistent with the weight given to these opinions, the ALJ incorporated each opinion into his RFC determination. (See AT 15, 73–74, 85–87, 377.)[5]

---

[5] After a neurological examination on May 2, 2013, Dr. Sharma opined that plaintiff is limited to: frequently lifting 10 pounds; occasionally lifting 20 pounds; standing and walking 6 hours per

4

1.  *Whether the ALJ erred at step two*

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [an individual's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the Ninth Circuit Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

The special technique for mental impairments requires an ALJ to "evaluate [an individual's] pertinent symptoms, signs, and laboratory findings to determine whether [she] ha[s] a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). "Assessment of functional limitations is a complex and highly individualized process that requires [an ALJ] to consider multiple issues and all relevant evidence to obtain a longitudinal picture of [an individual's] overall degree of functional limitation." 20 C.F.R. § 404.1520a(c)(1).

Plaintiff argues that the ALJ erred at step two because the ALJ failed to use the special technique mandated by 20 C.F.R § 404.1520a, when considering whether plaintiff has a severe mental impairment. (See ECF No. 16 at 18–23.) This argument is not well taken. Contrary to plaintiff's assertion, the ALJ utilized the special technique for mental impairments.

First, the ALJ reviewed plaintiff's medical record—including plaintiff's pertinent symptoms, signs, and objective findings—and found that

////

---

day with normal breaks; and occasionally holding, feeling, and fingering objects with the left hand. (AT 377.) Later that month, state agency physician Dr. Ligot reviewed plaintiff's medical records and similarly opined that plaintiff is limited to: occasionally carrying 20 pounds; frequently carrying 10 pounds; standing and/or walking for a total of 6 hours out of an 8 hour workday; never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally balancing, stooping, kneeling, crouching, and crawling; occasionally handling, fingering, and feeling with left hand; and avoiding concentrated exposures to hazards. (AT 73–74.) Dr. Saphir subsequently concurred in Dr. Ligot's opinion. (See AT 85–87.) The ALJ's RFC determination explicitly included each of these limitations. (See AT 15.)

> The record shows that the claimant was diagnosed by her Treating Physician (TP) with moderate severity major depression based on reported feelings of depression and guilt; reduced interest, energy and sleep; appetite disturbance, and speech or motor alterations in a patient health questionnaire on February 20, 2013 [AT 369–71]. However, there is no indication of other prescriptions to treat depression after the claimant completed the initial course of Zoloft on June 6, 2013 and subsequent exams by her Treating Physician noted normal mood and behavior [AT 398, 400, 402–03, 426–27]. It is noted in the record that the major depression was in full remission by January 26, 2015 [AT 568].

(AT 12.) These findings are supported by substantial evidence in the record. (See AT 369–71, 398, 400, 402–03, 426–27, 568.) Specifically, objective evidence in the record demonstrates that plaintiff displayed normal mental status examinations after her initial treatment for depression (see ECF No. 403, 427), and her provider clearly listed her depression "in full remission" on January 26, 2015 (see ECF No. 568).

Next, the ALJ "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders." (ECF No. 12.) The ALJ determined that plaintiff had no limitations in activities of daily living or social functioning; mild limitations in concentration, persistence, or pace; and no documented episodes of decompensation of extended duration. (Id.) These findings were also supported by substantial evidence in the record—specifically, plaintiff's own testimony, objective evidence in her medical records, as well as the opinions of state agency psychiatric consultants. (See AT 36–39, 45–53, 71, 83–84, 376, 383–386.)

Plaintiff makes various arguments regarding how the ALJ weighed the evidence at this step, asserting that the ALJ should have interpreted the record differently and found that plaintiff was severely impaired by her depression. (See ECF No. 16 at 18–23.) However, there is no medical opinion in the record that clearly indicates that plaintiff is limited by her depression. Indeed, the record does not compel a finding of severe impairment due to depression at step two, and the court may not disturb the ALJ's findings simply because plaintiff disagrees with the ALJ's interpretation of the evidence. See Tommasetti, 533 F.3d at 1038. Moreover, the ALJ's findings are based on his review of the entire record and, as explained, are supported by objective evidence in the record.

Therefore, the ALJ followed the appropriate procedures at step two and reached a conclusion supported by substantial evidence in the record. Accordingly, the court finds no error at step two.

### 2. *Whether the ALJ failed to make a proper step three determination*

The claimant "bears the burden of proving that . . . she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . . For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990). A determination of medical equivalence must rest on objective medical evidence. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must be based on medical evidence only."); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical equivalence must be based on medical findings. . . . A generalized assertion of functional problems is not enough to establish disability at step three."); 20 C.F.R. § 404.1529(d)(3) ("In considering whether your symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment."). Furthermore, "[t]he mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability." Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985). Instead, all of the specified medical criteria must be met or equaled. Id. at 1550.

On appeal, plaintiff asserts that the ALJ's conclusion that she did not meet Listing 11.04 is not supported by substantial evidence. (See ECF No. 16 at 9–12.) However, as explained,

plaintiff bears the burden of proving that she she meets the listing, in the first instance. See Burch, 400 F.3d at 683. To meet the severity criteria in Listing 11.04, plaintiff must demonstrate a central nervous system vascular accident, with one of the following occurring more than three months after the accident:

> A. Sensory or motor aphasia resulting in ineffective speech or communication; or
>
> B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station.

20 C.F.R. § 404 Subpt. P, App. 1 § 11.04 (effective until May 17, 2015.)

It is undisputed by plaintiff that she did not have any documented issues with her speech or communication. However, plaintiff argues that the ALJ erred because the record demonstrates that plaintiff met Listing 11.04B. (See ECF No. 16 at 9–12.) The ALJ considered this listing and concluded that

> As for significant and persistent disorganization in two extremities, the medical record shows that disturbed gross dexterous movements, or gait and station occur only intermittently and do not appear for significant portions of the adjudicatory period [see AT 234, 320, 336, 365, 375–77, 427, 448, 458, 479, 489, 529, 584.]
>
> After reviewing the record, the undersigned finds that the medical evidence of the claimant's impairments does not meet or medically equal the criteria set forth in listing 11.04.

(AT 15.) The ALJ further explained that his conclusion was also based upon the opinions of Drs. Ligot and Saphir, who also evaluated this issue and reached the same conclusion, and whose opinions plaintiff does not challenge. (See AT 15, 71–76, 84–89.)

Contrary to plaintiff's arguments, the ALJ's conclusion is supported by substantial evidence in the record. (See AT 234, 320, 335–36, 341, 364–65, 375–77, 427, 448, 458, 479, 489, 529, 584.) Moreover, later in his decision, the ALJ explicitly outlined and analyzed the medical evidence that supported his conclusion regarding Listing 11.04B. (See AT 16–20.) For example, from December 2012 (one month after plaintiff's vascular accident), through February 2013, the record demonstrates a "lack of substantial neurological deficit" in office visits, objective findings, and a CT scan. (See AT 17, 335–36, 341, 364–65.) Later, during a onetime

consultative examination, Dr. Sharma observed: dysmetria on the left in heel-to shin and finger-to-nose testing; walking with a limp in the left lower extremity and unable to do toe or heel walking; and diffuse decreased pinprick sensation in the left upper and lower extremities. (See AT 17, 377.) However, in multiple subsequent neurological examinations, Dr. Ote documented normal findings, including grossly normal bilateral motor and sensory function. (See AT 19, 427, 448, 458, 479, 489, 529, 584.) Based on this documentation, the ALJ reasonably concluded that "[t]he evidence suggests that the severity of symptoms the [plaintiff] displayed in the consultative exam with Dr. Sharma on May 2, 2013, which are not found elsewhere in the record, are not uniform and are intermittent in nature." (AT 19.)

Therefore, the ALJ appropriately determined that plaintiff failed to meet her burden to prove that she has an impairment that meets Listing 11.04, at step three.

3. *Whether the ALJ's RFC determination was without substantial evidentiary support*

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. See Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222–23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

Plaintiff indirectly challenges the sufficiency of the ALJ's RFC determination, asserting that the ALJ erred by failing to find plaintiff unable to work due to pain from her fibromyalgia and migraines. (See ECF No. 16 at 13.)

For the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence, and incorporated those opinions into the RFC. Additionally, plaintiff

9

has waived any argument concerning the ALJ's weighing of the medical opinions. Moreover, the ALJ's RFC determination was also based on a thorough analysis of plaintiff's medical record (see AT 16–21), supported by substantial evidence in the record. (See AT 72–74, 85–87, 235–37, 243–45, 269, 273, 289, 291, 298, 300–02, 313–15, 320, 335–36, 341, 364–65, 372–88, 427, 448, 451, 458, 468–71, 478–79, 489–90, 505, 515, 521, 529–30, 553, 584, 587–88.) The fact that the record also contains evidence of plaintiff's subjective complaints of pain, due to fibromyalgia and migraines, does not undermine the ALJ's findings, which are based on undisputed medical opinion evidence, as well as other objective evidence in the record. As such, plaintiff's argument that the RFC is without substantial evidence support is unavailing.

4.   *Whether the ALJ inappropriately relied on the VE's testimony*

Finally, plaintiff asserts that the VE's testimony was not supported by substantial evidence in the record, and as such, the ALJ erred by relying on it in finding plaintiff not disabled. (See ECF No. 16 at 12–15.) This argument is not persuasive.

During the hearing, the ALJ recited the limitations that he later included in the RFC to the VE and then asked the VE whether there would be any jobs that a hypothetical person with those limitations could perform. (See AT 60–61.) The VE responded yes, and provided a few examples: flagger (DOT number 372.667-022.); packer (DOT and 559.687-074); and courier / outside deliverer (DOT number 230.663-010). (See AT 61–62.) The VE's testimony is supported by substantial evidence because it is based upon the ALJ's RFC determination, which is itself supported by substantial evidence in the record. Therefore, the ALJ did not err when he relied on the VE's testimony.[6]

////

////

////

////

---

[6] Plaintiff also attacks the ALJ's decision by asserting that plaintiff is disabled under the Commissioner's medical-vocational guidelines. (See ECF No. 16 at 15–17.) This argument is without merit, as it is based on the erroneous assumption that both the ALJ's RFC determination and the VE's testimony are without substantial evidence in the record.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: February 1, 2018

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

14/ss.garza.16-1706.order msj